UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GINA SERRANO,

     Plaintiff,

v.                                  Case No. 4:19cv241-AW-HTC

ANDREW SAUL,[1]
Commissioner of Social Security,

     Defendant.

_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff Gina Serrano's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-83. Ms. Serrano's complaint was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon an independent review of the record, the undersigned finds that the Administrative Law Judge ("ALJ") sufficiently addressed

---

[1] In the case style of her complaint (ECF Doc. 1), Ms. Serrano named Nancy Berryhill as the Defendant. However, Andrew Saul is now the Commissioner of Social Security and was therefore automatically substituted for Nancy Berryhill as the Defendant. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

the supportability and consistency factors under the new regulations in addressing the opinion of Ms. Serrano's treating physician and that the ALJ's determination is supported by substantial evidence.  Thus, the undersigned respectfully recommends that the Commissioner's decision be AFFIRMED.

## I.    ISSUE ON REVIEW

Whether the ALJ provided a sufficient basis for assigning "minimally persuasive" weight to the medical opinion of Plaintiff's treating physician, Dr. Elizabeth Dickens.

## II.    PROCEDURAL HISTORY

On October 26, 2017, Ms. Serrano protectively filed an application for SSI, with an onset date of August 14, 2015.  T. 104.[2]  Although Ms. Serrano also filed an application for disability insurance benefits ("DIB"), she amended her onset date to February 18, 2016, at the hearing before the ALJ, and thus did not qualify for DIB.[3] T. 11, 39-40.  Ms. Serrano claims her disability is due to a combination of physical and mental impairments, including fibromyalgia, kidney damage, heart disease, and depression.  T. 104.

---

[2] Although the application summary for SSI benefits indicates that the application was made on December 1, 2017, that appears to be an error as all other references in the record state an application date of October 26, 2017.  T. 263.

[3] Ms. Serrano was last insured for benefits on June 30, 2014 and, thus, by amending her onset date, Ms. Serrano no longer qualified for DIB.  T. 39-40.  At the hearing, the ALJ confirmed Ms. Serrano understood the consequences of amending her onset date and counsel stated that Ms. Serrano is aware she has only a Title XVI claim.  T. 40.

The Commissioner denied the applications initially and on reconsideration. T. 11, 183, 188. The ALJ held a hearing on October 24, 2018. T. 36. On November 16, 2018, the ALJ found Ms. Serrano not disabled under the Act. T. 26. The Appeals Council denied a request for further review on March 20, 2019, and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 8. The Commissioner's determination is now before this Court for review.

## III.   STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

This Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Martin v. Sullivan*, 894

F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The Court, however, also may not look "only to those parts of the record which support the ALJ," but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  In other words, the Court also has an obligation to conduct "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five (5) steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve (12) months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[4]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, he is not disabled.

## IV.    THE ALJ's FINDINGS

In his written decision, the ALJ made the following findings pertinent to the issue raised in this appeal:

- Ms. Serrano suffers from the following severe impairments: degenerative disk disease of the lumbar and cervical spine; status-post bilateral carpal tunnel syndrome, status-post release and ulnar decompression; impingement syndrome of the eft shoulder; stage three chronic kidney disease; nephrolithiasis; coronary artery disease with unstable angina, status-post catheterization; hypertension; hyperlipidemia; depression; memory loss; diabetes mellitus; obesity; irritable bowel syndrome and history of diverticulitis.  T. 14.

- Ms. Serrano has the RFC to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b), except that she can frequently stoop, kneel, crouch,

---

[4] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

and crawl; she can frequently reach overhead with her left dominant upper extremity; and she is limited to performing simple, routine tasks.  T. 17.

- At Ms. Serrano's RFC, she is capable of performing her past relevant work as a convenience store clerk.  T. 24.

- Additionally, considering Ms. Serrano's age, education, work experience, and RFC, there are also other jobs that exist in significant numbers in the national economy that she can perform, including such occupations as ticket taker, collator operator, and marker.  T. 25-26.

- Ms. Serrano was not under a disability, as defined in the Act, from her amended alleged onset date of February 18, 2016 through the date of the ALJ's decision on November 16, 2018.  T. 26.

## V.    RELEVANT FACTUAL AND MEDICAL BACKGROUND

Ms. Serrano was one day shy of fifty (50) years old on her alleged disability onset date, and fifty-two (52) years old at the time of the hearing.  T. 25, 39-40.  She weighed 200 lbs. and was 5'3" at the time of the hearing.  T. 45.  Ms. Serrano lived in the Northern District of Florida with her son and daughter.  T. 53, ECF Doc. 1 at 1.  Ms. Serrano has a high school education, having received her diploma, and also has completed some vocational training.  *Id*.  She worked as a cashier at various convenience stores until 2009, when she resigned.  T. 53-54.  She has not worked since her 2009 resignation.  T. 53.

Dr. Dickens began treating Serrano in August 2014, prior to her onset date, for depression and generalized muscle aches and pains consistent with fibromyalgia. T. 588-594. Ms. Serrano saw Dr. Dickens once in September 2014, December 2014, January 2015, and March 2015. On each of these visits, Dr. Dickens' physical examinations noted that Ms. Serrano was depressed and exhibited tenderness to palpitation ("TTP") in her neck and back, but otherwise was in "no acute distress," had normal gait and station and muscle strength, and was normal in all other system areas examined. T. 571, 575-76, 579-80, 585.

Dr. Dickens referred Ms. Serrano to a cardiologist in December 2014 (T. 582) and Ms. Serrano began seeing a cardiologist in January 2015 through the end of that year. All of her visits were normal, and her stress tests were normal. T. 595, 603, 606. Dr. Dickens also referred Serrano to Tallahassee Neurological Clinic ("TNC") to address her memory problems and for pain management. Her first visit at TNC was in July 2015. T. 671. A physical exam reviewed no abnormalities. T. 673. An EEG was conducted in October 2015, to rule out seizures, which was also normal. T. 666.

Ms. Serrano saw Dr. Dickens again in January 2016, and Dr. Dickens noted Ms. Serrano's mood as "a little stressed, smiling" rather than depressed. T. 766. On April 4, 2016, Dr. Dickens' physical exam of Ms. Serrano was generally unremarkable, except that she exhibited TTP on her back and, as in January, Ms.

Serrano was a "little stressed." T. 760. Dr. Dickens found that Ms. Serrano had a cervical herniated disc and reported that trigger point injections were helping with pain management. T. 760-61. During her July 2016 visit, Dr. Dickens noted that Serrano reported experiencing dizziness and was in "mild pain." T. 748, 751.

Dr. Dickens continued to receive treatment from Dr. Winston Ortiz at TNC for her memory problems throughout 2016. In January 2016, Dr. Winston examined Serrano and noted that she was doing better, and her medications were working. T. 662. On July 28, 2016, Dr. Winston conducted a physical exam which found that Ms. Serrano was in no acute distress, and a neurologic exam found that she was oriented to person, place, and time, and her memory was "intact." T. 660. Dr. Ortiz ordered an MRI of Ms. Serrano's brain without contrast in an effort to rule out any intracranial structural pathology. *Id.* An MRI of Serrano's head without contrast was taken on September 8, 2016, and the findings were "unremarkable," except for mild chronic small vessel disease. T. 657.

Ms. Serrano returned to Dr. Dickens for an appointment on October 26, 2016. T. 770. Ms. Serrano reported that her depression and fibromyalgia were doing "okay on meds." *Id.* Dr. Dickens noted that Ms. Serrano's back and neck pain were stable with the tramadol and muscle relaxer she had been prescribed, and trigger point injections again had given her some improvement since her previous visit. T. 779. Dr. Dicken's reported that Ms. Serrano's depression and fibromyalgia, neuropathy,

and history of cervical and lumbar disc disease had gotten a "little worse with stress." *Id.*

On December 22, 2016, Ms. Serrano returned to TNC for a follow up visit. T. 652. Ms. Serrano reported that she had "good days and bad days" in regard to her memory, and that her bad days seemed to correlate with increased pain related to fibromyalgia. *Id.* A mini mental state exam ("MMSE") was conducted and Ms. Serrano scored a 30/30 (a score of 21 or greater indicates mild symptoms). *Id.* During her 6-month follow up visit with Dr. Ortiz in June 2017, he noted that she had no new problems or concerns, and her physical examinations were normal or negative in all areas. T. 647-48. Additionally, she reported pain at level of 5. T. 648.

Serrano continued to visit Dr. Dickens through 2017 and early part of 2018. In January 2017, Dr. Dickens' notes indicate that Ms. Serrano was TTP in her neck and back, was otherwise normal and was in "mild pain." T. 737. Ms. Serrano complained of knee pain during her May 2017 visit and a knee x-ray indicated mild degenerative changes. T. 732, 785. At a follow-up appointment on July 24, 2017, Dr. Dickens noted that Ms. Serrano was a "little stressed" and "smiling." *Id.* Ms. Serrano's depression, fibromyalgia, neuropathy, and cervical and lumbar disc disease were reported as "stable on meds." T. 728. Her back and neck pain were

recorded as "stable on tramadol and muscle relaxer," and Dr. Dickens stated that injections had yielded some improvement for pain management. *Id.*

During 2017, providers at TNC continued to manage Ms. Serrano's neck and shoulder pain with trigger point injections. During her March 13, 2017, follow up visit, Serrano reported a 75% reduction in pain since her last trigger point injections and less plain to her back. T. 688. During her July 11, 2017 visit, Ms. Serrano reported that injections to her lumbar spine had helped her 80% persistently, her cervical trigger point injections helped her 50% for a few weeks and rated her neck pain at 3/10 on average and 6/10 at worse. She reported her neck pain as interfering with her sleep and limiting her activity tolerance. T. 679. MRI scans of Ms. Serrano's cervical spine were taken on August 15, 2017, which showed mild cervical spondylosis with disc degeneration at C5-C6 and C6-C7, and moderate left foraminal narrowing at C6-C7. T. 678.

During Ms. Serrano's November 2017 follow up visit with Dr. Dickens, the doctor noted improved tenderness to palpation in all spots consistent with fibromyalgia, improved memory on medications, and an improved mood from the last visit. T. 715. No significant physical abnormalities were identified. T. 715-16. Ms. Serrano last visit with Dr. Dickens before the October 2018 hearing was in February 2018. T. 835. It does not appear that a physical exam was performed at

that time and a review of Ms. Serrano's systems was normal other than for pain in her joints. *Id.*

Also, in February 2018, Dr. Kenneth Long performed a consultative examination of Ms. Serrano for purposes of providing information to the state disability agency.[5] T. 828. Ms. Serrano drove to the appointment, her concentration and focus were adequate, and she was able to follow instructions without difficulty. T. 829. Ms. Serrano reported to Dr. Long that she was "generally able to provide for her own self care needs". T. 830.

Dr. Long administered a memory assessment which indicated "average" visual working memory, and "borderline" auditory, visual, immediate, and delayed memory. T. 831. Dr. Long diagnosed Ms. Serrano with unspecified depressive disorder by history. T. 833. In his prognosis/recommendations, Dr. Long stated that Ms. Serrano was negatively impacted by problems associated with anxiety and depression, and her prognosis was "poor" if left untreated. T. 833. However, he also stated that Ms. Serrano is encouraged to seek employment consistent with her previous training and work experience upon approval of her physician. *Id.*

---

[5] Dr. Long also performed a consultative examination of Ms. Serrano on June 18, 2013, and concluded at that time that she was a "capable individual" who appeared to be suffering from "mild depression." T. 511. He encouraged her to seek work and that with proper treatment her "mild psychological barriers" which were preventing her from working will improve. *Id.*

Ms. Serrano's medical records were also reviewed by stage agency examiners, Dr. Janet Anguas-Keiter upon initial consideration (T. 103-112) and Drs. Jennifer Meyers and Dr. Richard Lewis, on reconsideration. Dr. Anguas-Keiter concluded that Ms. Serrano could stand and/or walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and that Ms. Serrano was moderately in her ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. T. 113, 115. Dr. Lewis reached the same conclusion regarding Ms. Serrano's physical limitations. T. 165. Additionally, Dr. Meyers concluded that Ms. Serrano "would likely have problems carrying out detailed instructions, maintaining sustained attention/concentration, and completing work tasks at a consistent pace." T. 167. However, Ms. Serrano is "capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour workday." *Id.*

## VI.    LEGAL ANALYSIS

On October 19, 2018, Dr. Dickens submitted a 2-page medical source statement in which she opines that Ms. Serrano could sit for only 30 minutes at one time before needing a break, stand for only 30 minutes at one time before needing a break, and sit and stand/walk for a total of 4 hours in an 8-hour work day. T. 951.

Additionally, Dr. Dickens opined that Ms. Serrano would need unscheduled breaks and would be able to stay on task for only 25% of a regular work day. T. 952.[6]

As stated above, this appeal is limited to one issue: whether the ALJ provided a sufficient basis for assigning "minimally persuasive" weight to Dr. Dickens' opinion. ECF Doc. 21 at 1. In his decision, the ALJ explained that Dr. Dickens' opinions "are extreme and otherwise inconsistent with the overall evidence. The [ALJ] notes that Dr. Dickens did not have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions. Therefore, the opinions are not reflective of the totality of the evidence." T. 24.

Despite this explanation, Ms. Serrano argues that the ALJ failed to "clearly articulate, with particularity and specificity, what evidence led the ALJ to their conclusion." *Id.* at 5. In response, the Commissioner contends the ALJ adequately explained his treatment of Dr. Dickens' opinion under the new regulatory framework that went into effect on March 27, 2017, and the ALJ's determination is supported by substantial evidence. ECF Doc. 21 at 12-13. The undersigned agrees.

**A. Elimination of The Treating Physician Rule**

Prior to March 27, 2017, an ALJ was required to assign greater weight to the opinions of treating physicians. This rule, referred to as the "treating physician rule"

[6] The second page of the copy of Dr. Dickens' medical source statement in the record is not readable. This portion of Dr. Dickens' opinion comes from Ms. Serrano's brief (ECF Doc. 20 at 2).

required the ALJ to assign controlling weight to the opinion of a treating physician if the opinion was well supported and not inconsistent with other evidence in the record.  *See* 20 C.F.R. § 416.927(c)(2).  If an ALJ assigned less than controlling weight to a treating physician, the ALJ had to provide good cause for doing so.  *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when "(1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... [the opinion] was conclusory or inconsistent with the doctor's own medical records."  *Woodley v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1433153, at *4 (N.D. Ala. Mar. 24, 2020), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

The new Social Security Administration ("SSA") regulations, published on January 18, 2017 and effective on March 27, 2017, apply to this case,[7] however, and eliminate the treating physician rule.  *See* 20 C.F.R. §§ 404.1520c, 416.920c (2017); *Dement v. Berryhill*, 2017 WL 1405165 at *7, n. 8 (M.D. Ala. Apr. 19, 2017).  In revising the regulations to remove the treating source rule, the SSA explained that "under the old rules, courts reviewing claims tended to focus more on whether the

---

[7] Although Ms. Serrano argued to the Appeals Council that the ALJ erred by not giving "controlling weight" to Dr. Dickens' opinions, she argues here that the ALJ's assessment of Dr. Dickens' opinions fails to comply with the new regulations.  Thus, there does not appear to be any dispute that the new regulations apply to Ms. Serrano's claim since it was filed after March 27, 2017.  *See Dement v. Berryhill*, 2017 WL 1405165 at *7, n. 8 (M.D. Ala. Apr. 19, 2017)..

agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … *these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us.*"  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).

"Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v.* Saul, 2020 WL 376995, at *4, n. 3 (D. S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2).  While there are several factors the ALJ is to consider, "[t]he most important factors … are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."[8]  20 C.F.R. § 416.920c. Additionally, the new regulations changed articulation standards required of ALJs in assessing medical source opinions.

First, an ALJ need not assign evidentiary weight to the testimony of a claimant's healthcare providers.  *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  Second, because controlling weight is no longer required, the

---

[8] The other factors are relationship with the claimant, frequency of examinations, purpose of treatment relationship, extent of treatment relationship, examining relationship, specialization, and other factors which tend to support or contradict the medical source opinion.  *See* 20 C.F.R. § 416.920c(c)(1)-(5).

ALJ also no longer needs to "give good reason" in the notice of determination or decision for the weight given to the treating source's medical opinion. *Compare* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Third, while the ALJ must explain how he considered the supportability and consistency factors for a medical source opinion, the ALJ need not explain how it considered any other factors. 20 C.F.R. § 416.920c(b)(2).

B.    **The ALJ Provided A Sufficient Explanation For Assigning Minimally Persuasive Weight to Dr. Dickens' Opinion And His Determination is Supported by Substantial Evidence**

In assigning "minimally persuasive" weight to Dr. Dickens' medical opinions, the ALJ explained that Dr. Dickens' opinions were "inconsistent with the overall evidence received at the hearing level, including Dr. Dickens' own treatment notes at B15F" and "simply unsupported by numerous objective examinations" discussed earlier in the ALJ's narrative treatment summary.  T. 24.

1.    Inconsistency With Overall Evidence

While the ALJ's rejection of Dr. Dickens' opinions as "inconsistent with the overall evidence" *could* be conclusory, it is not here.  Instead, it is an accurate

statement of the record because the undersigned is unable to find any support in the record for Dr. Dickens' opinions regarding the severity of the limitations on Ms. Serrano caused by her impairments.[9]

For example, while Dr. Dickens opined that Ms. Serrano would be off task 25% of the work day and need frequent unscheduled breaks, records from TNC, where she was treated for her memory problems, tell a different story. In January 2016, Dr. Winston noted Ms. Serrano was doing better and her medications were working. In July 2016, Dr. Winston found Ms. Serrano's memory to be intact and, as the ALJ discussed in his opinion, Ms. Serrano correctly responded to all thirty (30) tasks during a dementia assessment conducted at the Clinic (T. 23), which showed that her neurological memory was "grossly normal." T. 652.

Dr. Dickens' opinions are also inconsistent with those of Dr. Long and Dr. Meyers. During Dr. Long's consultative examination, he noted that Ms. Serrano drove herself to the appointed, was able to provide for her own self-care needs, and could follow instructions without difficult. His memory assessment testing showed

---

[9] Although Ms. Serrano argues that Dr. Dickens' opinions are consistent with Ms. Serrano's subjective complaints and are limitations that could be produced by her impairments, the ALJ determined that Ms. Serrano's statements are not consistent with the medical evidence or even reports she made to medical providers in the past. T. 20-21. Ms. Serrano does not take issue with the ALJ's credibility determination in this appeal. Moreover, the record supports the ALJ's determination. As stated herein, Ms. Serrano reported to Dr. Long that she could take care of her own personal needs, including her financial affairs. Ms. Serrano also drives. Additionally, Dr. Anguas-Keiter also determined that Ms. Serrano's statement of her symptoms was not consistent with the objective medical evidence, and therefore, only partially credible. T. 112.

average working memory, and he encouraged her to seek employment consistent with her prior training and experience.  Dr Meyers concluded Ms. Serrano had moderate limitations in her ability to understand, remember, or apply information, concentrate, persist or maintain pace.  Tr. 162-64.

Likewise, Dr. Dickens' conclusions about Ms. Serrano's physical limitations (specifically, how long she could sit and stand/walk in an 8-hour working day) are inconsistent with those of Drs. Anguas-Keiter and Lewis, who determined that Ms. Serrano would be able to do sit or stand for about six (6) hours in a eight (8) hour workday.  T. 147.  Dr. Dickens' conclusions are also inconsistent with the records from the providers at TNC, who treated Ms. Serrano for her joint pain.  As set forth above in Section V, in March 2017, Ms. Serrano reported a 75% reduction in pain and, in July 2017, an 80% reduction.  She rated her pain a 3/10 on average.

### 2.    Inconsistency With Her Own Treatment Notes

While the ALJ does not cite to a specific excerpt or page of Dr. Dickens' treatment notes which he found to be inconsistent with her opinions, there is no requirement that he do so.  *See Lewen v. Comm'r of Soc. Sec*, 605 F. App'x 967, 968 (11th Cir. 2015) ("In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

2005)).  Ms. Serrano argues that Dr. Dickens' opinions are consistent with her notes which shows that in a couple of instances Ms. Serrano was in "mild pain" or was a "little stressed," that she had TTP "at points", and that on two occasions (out of more than a dozen visits) she was "depressed."  ECF Doc. 20 at 3-4.  It is a far leap, however, to go from mild pain and tenderness at points to being able to stand for only 30 minutes, sit for only 30 minutes, require frequent unscheduled breaks, and be on task only 25% of the work day.

Moreover, as set forth above, Dr. Dickens' treatment notes show that on each visit, Ms. Serrano was in "no acute distress," had normal muscle strength, and normal gait and station.  On each visit, a review of Ms. Serrano's systems was negative for any issues, other than for joint pain and depression.  Additionally, during Ms. Serrano's follow up visits with Dr. Dickens in 2017 and 2018, Dr. Dickens noted that she her pain was "stable", and she was "smiling."  Indeed, Dr. Dickens' notes for November 2017, indicate that Ms. Serrano showed improved tenderness, improved memory, and improved mood.

3.    Dr. Dickens' Opinions Are Not Supported By The Objective Examinations

The ALJ's explanation that Dr. Dickens' opinions are not supported by the objective examinations is also not conclusory.  To the contrary, the ALJ states that he is referencing the objective examinations discussed elsewhere in his opinion.  Those objective examinations include the following: the dementia exam, discussed

above; the September 8, 2016 MRI scans of Ms. Serrano's brain that were unremarkable and essentially unchanged from 2015; objective examinations showing "steady gait, normal posture, 5/5 muscle strength in the upper and lower extremities, and normal deep tendon reflexes bilaterally"; and objective examinations of Ms. Serrano's shoulder showing "normal strength, sensation, and full range of motion."  T. 22.

Finally, the undersigned finds Ms. Serrano's reliance on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019) to be misplaced.  Notably, the court in *Schink* did not apply the new regulations.  In fact, the court explicitly acknowledged that new regulations applied to claims filed after March 27, 2017, and it therefore was not considering how the new regulations would apply to Eleventh Circuit precedents for purposes of Schink's claim, which was filed in 2010.  *See Schink*, 935 F.3d at 1259 n. 4.  Thus, the critical issue in *Schink* was whether the ALJ had stated sufficient good cause to apply less than controlling weight to the treating physician's decision.  *See id.* at 1259-60.  Moreover, unlike the facts here, the court in *Schink* was unable to identify any inconsistences with the treating physician's opinions based on its review of the record.  *See id.* at 1263.

## VII.  CONCLUSION

For the forgoing reasons, the undersigned finds that the ALJ has sufficiently considered and explained his application of the supportability and consistency

factors to the treating physician's opinions and his determination that the opinions should be afforded only minimally persuasive weight is supported by substantial evidence.  *See Jones v. Berryhill*, 392 F.Supp. 3d 8331, 839 (M.D. Tenn. 2019) (finding ALJ's explanation that treating physician's opinion was not "consistent with other evidence" and "not supported by objective medical evidence," as sufficient under new regulations).  Thus, the ALJ's decision denying benefits should be affirmed.

Accordingly, it is respectfully RECOMMENDED that:

1.    The decision of the Commissioner be AFFIRMED and Ms. Serrano's applications for Disability Insurance Benefits and Supplemental Security Income be DENIED.

2.    The clerk be directed to enter judgment consistent with this opinion and close the file.

At Pensacola, Florida this 7th day of August, 2020.

*s Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party

failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.